IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS A. NEUHARD, and : | |
| BARBARA S. NEUHARD : | |
|     Plaintiffs : | |
|     vs. : | CIVIL ACTION – LAW |
| : | NO:  4:11-CV-1989 |
| : | |
| : | JURY TRIAL DEMANDED |
| RANGE RESOURCES - : | |
| APPALACHIA, L.L.C. : | JUDGE ROBERT MARIANI |
|     Defendant : | |
| : | |

### PLAINTIFFS' BRIEF IN SUPPORT OF THE PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT

The Plaintiffs submit the following brief in support of their Motion for Summary Judgment.

### BACKGROUND

This case was initiated by a Complaint, filed in the Lycoming County Court of Common Pleas on September 28, 2011.  In the Complaint, the Plaintiffs seek a Declaratory Judgment regarding whether an oil and gas lease that they entered into on June 21, 2006 has expired by its own terms.  On October 28, 2011, the Defendant, Range Resources-Appalachia, L.L.C. ("Range"), removed this case to Federal Court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, and 28 U.S.C. § 1441.  The Defendant filed an Answer, raised Affirmative Defenses, and made a Counterclaim seeking a declaratory judgment that the lease is valid.  The Plaintiffs filed an Answer to the Counterclaim.  Subsequently, discovery was conducted between the parties.  There are no factual issues in dispute, and the issues before the

1

Court involve the interpretation of contract provisions of the Oil and Gas Lease, and therefore, are solely questions of law.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if its determination might affect the outcome of suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

## FACTUAL BACKGROUD

On June 21, 2006, Thomas and Barbara Neuhard ("Plaintiffs," "Neuhards" or "Lessors") entered into an Oil, Gas and Coalbed Methane Gas Lease ("lease") with Great Lakes Energy Partners L.L.C. A copy of the lease is attached as Exhibit "A." Great Lakes Energy Partners L.L.C. has since changed its name to Range Resources-Appalachia L.L.C. ("Defendant," "Range," or "Lessee"). The oil and gas lease is for 47 acres, more or less, in Lewis Township, Lycoming County, Pennsylvania. The gas lease had a primary term of five years. Therefore, unless extended, the lease would expire by its own terms on June 21, 2011.

Between June 21, 2006 and June 21, 2011, the Neuhards were divorced, and in the property settlement agreement, Barbara Neuhard became the sole owner of the surface of the 47 acres, and Thomas and Barbara Neuhard retained, equally, their ownership interests in the subsurface rights to the property. These rights included the oil and gas rights to the property. Barbara Neuhard Dep., p. 5-13, Exhibit "F."

On April 21, 2011, Range applied for a permit to drill a new, non-vertical gas well that targeted the Marcellus Shale Formation. The well was named the "1H" well. A copy of the well permit application is attached as Exhibit "C." The well was to be drilled from a surface location on the property of Eugene Null. The Null property is a tract of land located immediately to the North of the Neuhard property. According to the permit application, the horizontal wellbore was proposed to travel vertically down to the Marcellus Shale underneath the Null property, and then, at a point approximately 800 feet from the vertical section, the wellbore was to enter the Marcellus Shale, underneath the Null property. See pages 3 & 4 of well permit application, Exhibit "C." The wellbore would continue horizontally through the Marcellus Shale on the Null property and then cross, subsurface, into the Marcellus Shale under the surface of the Neuhard property. On June 7, 2011, Range was issued well permit # 081-20624 from the Pennsylvania Department of Environmental Protection to drill a natural gas well for the "Null, Eugene A Unit, 1H," targeting the Marcellus Shale Formation. A copy of the permit is attached as Exhibit "D." The permit authorized them to drill a gas well along the route specified in the permit application.

On June 15, 2011, Range filed a Designation of Unit document for the "Null Eugene A Unit," in the Lycoming County Courthouse. A copy of the Designation of Unit is attached as Exhibit "B." The Designation of Unit document indicates that "by virtue of the authority conferred by the terms of the leases" it creates a 395.0638 acre production unit, comprised of nine separately owned parcels of land that include the Neuhards' 47 acres. Range did not notify the Neuhards of filing this designation of unit document until July 7, 2011. Linda Slone Dep., p. 18, Exhibit "G."

On June 16, 2011, Barbara Neuhard signed a Road Right of Way agreement that granted

3

Range the right to widen and grade a turn from Upper Bobst Mountain Road onto Bobst Mountain Road to make it easier for Range's truck traffic to access the surface location from which they intended to drill the "1H" gas well on Eugene Null's property.  Barbara Neuhard dep., p. 57, Exhibit "F."

On July 1, 2011, the Neuhards, by and through counsel, notified Range that it was the Neuhards' position that Range had failed to commence a well on the Neuhards' "leased premises," within the five year primary term of the lease, and therefore, the lease had expired by its own terms.  Deposition of Carl Stienle at p. 54, Exhibit "H."  Range, by letter dated July 7, 2011, responded that it was their position that the Neuhards' lease was "maintained by Range's commencement of a well on acreage pooled with the Neuhards' leased premises."  Dep. of Carl Steinle, pp. 55-56, Exhibit "H."

## QUESTIONS INVOLVED

1. Whether the Oil and Gas lease, Exhibit "A," was extended beyond the five year primary term of the lease by Range including the Neuhards' property in the 395.0638 acre production unit that it created by filing the Designation of Unit document for the Null Eugene A Unit, on June 15, 2011?  (Suggested Answer:  No.)

2. Whether Range's activities regarding the "1H" well on the surface of the property owned by Eugene Null, constitutes the "commencement of a well" on the Neuhards' property, such that the Neuhard Oil and Gas lease, Exhibit "A," has been extended beyond the five year primary term? (Suggested Answer: No.)

## ARGUMENT

Issue 1

4

Whether the Oil and Gas lease, Exhibit "A," was extended beyond the five year primary term of the lease by Range including the Neuhards' property in the 395.0638 acre production unit that it created when it filed the Designation of Unit document for the Null Eugene A Unit, on June 15, 2011?

It is the Neuhards' position that Range Resources has failed to "commence a well" on the leased premises within the five year primary term of the oil and gas lease. The Neuhards' specifically notified Range Resources of their position by letter of counsel, dated July 1, 2011. Dep. of Carl Stienle, p. 54, Exhibit "H." The reason for this notification was that, as of June 21, 2011, Range Resources had not taken any steps to create a well site on the surface of the Neuhards' 47 acres. The oil and gas lease provides at paragraph 8.1:

> 8.1   Unless sooner terminated as otherwise herein provided, Lessee shall commence a well on the Leased Premises or on a spacing unit containing a portion of the Leased Premises, within five (5) years from the date first written above and shall drill said well with due diligence. In the event the aforesaid well is not commenced within such five (5) year period, this Agreement shall be automatically terminated in its entirety, unless Lessor approves in writing, thirty (30) days in advance of the anniversary date of this Agreement, the continuation of this Agreement on a year-to-year basis.

See Exhibit "A," paragraph 8.1.

The Neuhards never approved in writing any extension or continuation of the lease. Range's Answer, paragraph 23. Pursuant to the July 7, 2011 letter from Carl Stienle, Land Manager for Range Resources, Range expressly indicated to counsel for the Neuhards' the following:

> With regard to the substance of your letter, your position that the referenced lease has terminated is not factually or legally correct. It is maintained by **Range's commencement of a well on acreage pooled with the Neuhards' leased premises.** The Neuhard lease is included in the Designation of Unit for the Null Eugene A Unit filed by Range in the Lycoming County Real Property Records at Book 7312, Page 314.

See Exhibit "E."

5

This was the first notification that Range gave to the Neuhards regarding the Unitization. Dep. of Linda Slone, p. 18, Exhibit "G." After receiving this letter, the Neuhards obtained a copy of the Designation of Unit Document referenced in Carl Stienle's letter. Upon review, it became apparent that the unit that Range had created exceeded the unit size limitations in the unitization provisions of the Oil and Gas Lease. Consequently, it is the Neuhards' position that the 395.0638 acre unit that Range created by the Designation of Unit document, Exhibit "B," filed on June 15, 2011, was not authorized by the provisions of the Oil and Gas Lease, Exhibit "A," and therefore, cannot form a basis for extending the lease beyond the five year primary term of the lease. It is for this reason that the Neuhards seek a declaratory judgment.

Like many oil and gas leases, the Lease, Exhibit "A," contains a unitization provision. According to Carl Steinle, a unitization provision in an oil and gas lease provides for:

> The combining of leases to form a drilling or producing unit to combine acres to get together into a single block where all the leases were treated as if they were a single lease.

Dep. of Carl Steinle, pp. 15 – 16, Exhibit "H."

It has also been held that "a unit is a combination of the land covered by an oil and gas lease with other land to develop the underlying oil and gas." *Trans-Western Petroleum, Inc. v. United States Gypsum Co.,* 584 F.3d 988 at p. 991 (10th Cir. 2009), *citing* 4 EUGENE KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 48.3(a)(1) (1990). The issue in the *Trans-Western Petroleum, Inc. v. United States Gypsum Co.,* 584 F.3d 988 (10th Cir. 2009), case is actually the identical issue before the Court in this case. In that case, the Plaintiff sought a declaratory judgment that the lease had expired by its own terms, and that the Defendant failed to

properly exercise the unitization authority granted in the lease agreement. *Id.* at 990. In that case, just as in this case, the primary term had expired, and the Defendants were of the position that the lease was extended as a result of their unitization of the property with other lands to form a production unit. *Id*. at 990. The Court noted that it is the "unitization clause [that] governs… [the] power to unitize the lands covered by… [the] lease. *Id.* at p. 993. Citing 4 KUNTZ, *supra* note 1, § 48.3(a)(1), the Court further noted that "[d]espite the attitude that the pooling [or unitization] clause is to be liberally construed, each pooling [or unitization] clause must be carefully examined for specific provisions that restrict the power [and] prescribe the manner in which it may be used…."

In the Oil and Gas Lease, Exhibit "A," the lessee is granted the right to unitize the leased premises with lands and leases adjacent to or in the immediate vicinity of the leased premises for the purpose of forming production units. If unitized properly, pursuant to paragraph 12.2 of the lease, "[d]rilling…operations upon…any part of such unit shall be treated…as operations or production from the Leased Premises," and the result would be that by conducting drilling operations on the Null property, the Neuhards' lease would be extended beyond the five year primary term. However, the lease expressly restricts and limits the Lessee's unitization authority by the provisions of paragraph 12.1, titled "Unitization." Paragraph 12.1 provides as follows:

> **UNITIZATION**
>
> 12.1   Lessee shall have the right at any time or times to pool and consolidate the Leased Premises, in whole or in part or as to any stratum or strata, with lands or leases adjacent to or in the immediate vicinity of the Leased Premises, so as to constitute a unit or units for the purpose of entering, with the owners and /or Lessees, into joint operating agreements providing for the joint operation and development of the Leased Premises or portions thereof with adjoining lands to prevent the drilling of an

> excessive number of wells or of wells located too close to the boundary of the Leased Premises, providing that said unit or pool is not arbitrary and the acreage constituting the unit or pool is comprised of a minimum of 50% of Lessor's acreage OR Lessor has approved such unitization in writing to Lessee.  In the absence of any spacing order, rule, or regulation of the Pennsylvania Department of Environmental Protection, **any such unit or units shall be limited in size to the area surrounding each well provided for in Section 9.2 above.**    (emphasis added)

There is no spacing order, rule or regulation of the Pennsylvania Department of Environmental Protection that has been entered regarding the leased premises or any lands included in the June 15, 2011 Designation of Unit for the "Null Eugene A Unit."  Range's Answer to Interrogatory number 4, Exhibit "I."   Since this well targets the Marcellus Shale Formation, it is not subject to the requirements of the Oil and Gas Conservation Law, as the well will not penetrate the Onondaga Horizon.  58 P.S. § 403(b)(1).   It is undisputed that the Marcellus Shale Formation is located above the Onondaga Formation, and that natural gas is the principle product that Range intends to produce from the "Null Eugene A Unit."  Range's Answer, paragraphs 31 and 32.

Paragraph 12.1 provides that the Lessee's authority to unitize the leased premises with other properties is restricted to the creation of units that are limited in size to the "area surrounding each well provided for in section 9.2" of the lease.  Section 9.2 provides as follows:

> 9.2   Lessee shall not be required under this provision to drill more wells than required or allowed under any spacing order, rule, or regulation of the Pennsylvania Department of Environmental Protection, or in the absence of such order, more than one well in the: (i) one hundred and sixty (160) acres around each well from which oil is produced as the principle product from depths below the top of the Onondaga Formation; (ii)  forty (40) acres around each well from which oil is produced as the principle product from depths above the top of the Onondaga Formation; (iii)  six hundred forty (640) acres around each well from which gas is being produced as the principle product from depths below the top of the Onondaga Formation; **(iv) three hundred fifty (350) acres around each well from which gas is being produced as the principle product from**

8

> **depths above the Onondaga Formation**, and (v) eighty (80) acres around each well from which coal bed methane gas is being produced as the principle product. (emphasis added)

Therefore, pursuant to section 12.1, and 9.2(iv) of the lease, the Lessee's unitization authority is limited to the creation of units 350 acres or smaller, for Marcellus Shale gas wells.  Dep. of Linda Slone, p. 14 – 15, Exhibit "G."  This restriction in the unitization clause is significant since "[a]bsent express authority, a lessee has no power to pool [unitize] interests in the estate retained by the lessor with those of other lessors."*Jones v. Killingsworth,* 403 S.W.2d 325 (1965 Tex.).

In Answers to Interrogatories and in deposition testimony, Range has taken the position that in the case of "drilling horizontal wells," the unit acreage limitation under this lease expands to 1,050 acres.  Deposition of Carl Stienle pp. 72 – 73, Exhibit "H."   However, such language is not found in the lease and such an interpretation is in direct conflict with the express terms of the lease agreement.  The lease agreement expressly limits the unit size to 350 acres around each well targeting the Marcellus Formation.  Pursuant to paragraph 10.2 and 9.2 of the lease, absent written approval from the lessor, well spacing shall not be closer than one well per 350 acre spacing area around each well.  Paragraph 10.2 provides as follows:

> 10.2 Well spacing shall not be closer than one (1) well per spacing unit as indicated in Section 9.2, unless Lessee has obtained written approval from the Lessor, which shall not be unreasonably withheld or delayed. A copy of any "well spacing orders" which are applicable in part or whole to this Agreement shall be made available upon written request of Lessor or Consultant.

When read together, paragraph 10.2 and paragraph 9.2 limits by contract, the lessee to drilling one well per 350 acre area around each well, unless Range obtains written approval from the Lessor to modify these restrictions.   At no time did Range obtain the approval of the Neuhards,

or anyone else in the unit, for the authority to drill more than one well within the 350 acre spacing area. Dep. of Carl Steinle, p. 34, Exhibit "H."  Range is currently in violation of this provision because they currently have three wells drilled from the Eugene Null well pad. Dep. of Carl Steinle, p. 30 -35, Exhibit "H." The wells are on the same well pad and the wells "almost touch each other within fifty feet of the surface." Dep. of Carl Steinle, p. 31, Exhibit "H."

Even assuming this Court was to find that it was not a violation of 10.2 to have the three wells located on the same pad, almost touching each other; this still does not permit each individual "unit" to be larger than 350 acres. Pursuant to 9.2 Range is still limited to a 350 acre unit around each well for gas wells that target a formation above the Onondaga Formation.

The economic effect of the Neuhards' 47 acres being placed in a 395.0638 acre rather than the 350 acre unit is significant. Paragraph 12.3 of the oil and gas lease provides that in the event of unitization, the Neuhards' royalty will be paid proportionately, based on the number of acres that the Neuhards have in the unit, in relation to the total unit size.  As a result, the Neuhards royalty interest is effectively diluted by a larger unit. This fact is not in dispute. Carl Stienle, in his deposition, agreed that assuming everything else is equal; the Neuhards would receive more money in royalty if their 47 acres was included in a 350 acre production unit rather than a 395 acre production unit. Dep. of Carl Steinle, p. 48, Exhibit "H."

It is the Neuhard's position that their property was not properly unitized, and therefore, the commencement of a well on the Eugene Null well pad does not constitute the commencement of a well on the leased premises as provided for by paragraph 12.2.  Since the lease was not extended by the commencement of a well on acres unitized with the leased premises, this Court should find that the five year primary term expired on June 21, 2011.

Issue 2

Whether Range's activities regarding the "1H" well on the surface of the property owned by Eugene Null, constitutes the "commencement of a well" on the Neuhards' property, such that the Neuhard Oil and Gas lease, Exhibit "A," has been extended beyond the five year primary term?

Despite the fact that Carl Steinle's letter of July 7, 2011, expressly indicates that Range is of the position that "the Neuhard lease is extended by Range's commencement of a well on acreage pooled with the Neuhards' leased premises," Range now also contends that the Neuhards' oil and gas lease is extended by the "commencement of a well **on the Neuhards' leased premises**." Range is of this opinion despite the fact that it is undisputed that no surface drilling pad has ever been initiated in any way on the Neuhards' property. Range's Answer paragraph 17.

Pursuant to paragraph 8.1 of the Oil and Gas lease, there are two ways that the Neuhards' lease could be extended beyond the five year primary term of the lease. The first way was for the lessee to "commence a well on the leased premises." The second way was for the lessee to commence a well "on a spacing unit containing a portion of the Leased Premises." See paragraph 8.1 of Exhibit "A." Range, however, contends that there is a third way to extend the lease and that would be to "commence a well" on the surface of the Eugene Null property, with plans for the wellbore to eventually travel through the Marcellus Shale under the Null property and cross into the Marcellus Shale under the Neuhard property.

It is the Neuhards' position that paragraph 8.1 must be read to mean that the lease would be extended if a well was drilled "on the surface" of the Neuhards' property or, if unitized correctly, on the surface of any property in the unit. It is undisputed that the "1H"

11

well on the Null property did not have a bit in the ground on the Null property until August 4, 2011, well past the expiration date of the Neuhard lease. Dep. of Carl Steinle, p. 60, Exhibit "H." Therefore, it is also undisputed that the bit did not enter the Neuhards' subsurface until sometime after August 4, 2011. Deposition of Carl Steinle, p. 60, Exhibit "H."

Range contends that since they "commenced the well" on the Null property and since the path of the drill bit would eventually enter the Marcellus Shale under the Neuhard property, a well has been "commenced on the Neuhard property." Such an interpretation would mean that the Neuhards' property could be held indefinitely, outside the terms of the unitization provisions of the lease. Such an interpretation would mean that it was the intent of the parties that the "commencement of a well" on the surface of a neighbor's property was to have the same effect as if the well was drilled from a surface location on the Neuhards' property. Such an interpretation becomes extremely problematic and inconsistent with the various terms of the lease agreement as a whole. Such an interpretation is simply unreasonable and never was the intent of either party.

Such an interpretation is unreasonable because, when you read the lease as a whole, it is evident that the primary consideration to the Neuhards is a "royalty" to be paid on the gas (or oil) that is "produced" from gas wells drilled on their property. Paragraph 3.4 provides as follows:

**ROYALTY**

> 3.4 Lessee shall pay royalty proportionately to Lessor and Consultant, as set forth herein, at the royalty rate of fourteen percent (14%) to lessor and one and one half percent to (1.5%) to consultant of the price received by Lessor, for **all natural gas, casing head gas, coalbed methane gas or other gaseous substances produced and sold by Lessee from each gas well drilled on the Leased Premises**, or lands there unitized therewith, less any charges for transportation, compression, dehydration paid by Lessee in order to get said gas to market, the cumulative amount to be paid to Lessor and Consultant will be fifteen and one-half percent (15.5%)

> royalty interest multiplied by the fractional interest held by Lessor in the Leased Premises and **the fractional interest that the Leased Premises contributes to the spacing unit surrounding each well, and shall be payable monthly to Lessor and Consultant.**

Under the royalty provision, if the well is drilled "on the leased premises" and the property is not unitized, then the lessor will get paid a royalty of 14% of all of the gas that is "produced" and sold from each gas well drilled "on the leased premises." In the oil and gas industry, gas is "produced" when it is brought to the surface of the ground, at the wellhead. *See Kilmer v. Elexco,* 990 A.2d 1147 at p. 1157 (Pa. Supreme Ct. 2010). 1 The wellheads for the gas wells in the Null Unit are located on the property of Eugene Null, and the gas will be "produced" at the well pad on the Eugene Null property. Dep. of Carl Steinle, p. 30-33, Exhibit "H," Dep. of Magell Candelaria, pp. 7-10, Exhibit "J." "The term 'wellhead' generally refers to the point at which gas is severed from or removed from the ground." WILLIAMS AND MYERS, MANUAL OF OIL AND GAS TERMS, 13th Edition, p. 1143, *citing Schrouder v. Terra Energy, Ltd.,* 223 Mich.App. 176, 565 N.W.2d 887, 890 (1997). Consequently, if the lease is interpreted to mean that drilling a well from a surface location on Eugene Null's property, with the bore eventually going under the Neuhard property is the commencement of a well "on the leased premises" of the Neuhards, this interpretation would allow for the Neuhards' property to be held without unitization. A well can be drilled without unitization; however, without unitization, Eugene Null would receive 14% of all of the gas "produced" from the wells located on the pad on his property, even though two of the wells go under the Neuhard property, and derive a

---

1 In *Kilmer* the Supreme Court concluded that "[i]n the industry…the "expenses of production" relate to the costs of drilling the well and **getting the product to the surface**, but do not encompass the costs of getting the product from the wellhead to the point of sale, as those costs are termed **[\*\*28]**"post-production costs, "consequently, if the costs of production end at the wellhead, gas has been produced at the wellhead. Any costs thereafter are post-

13

significant portion of the gas from under the Neuhard property. This is because the unitization provisions of the lease are also the provisions of the lease that provide for the contractual agreement by the various lessors to allow for the proportionate sharing of royalties among the various landowners in a unit, based on the acres each lessor has in the unit.

If the property was correctly unitized pursuant to the provisions of 12.1, 12.2 and 12.3 of the lease, then the Neuhards, by agreement, would receive their royalty based on their proportionate share of acres in the unit. It would not matter that the gas was actually "produced," on the surface of the Null property; the unitization provision of the lease would provide that the Neuhards would receive their proportionate share of the royalties. This "sharing" of royalties is achieved by agreement, pursuant to the terms of the unitization provisions of the individual leases in the unit. However, under the lease, the "commencement of a well on the leased premises" can hold the leased premises without unitization. The royalty then is a percentage of the gas produced from the leasehold (rather than a share based on acreage lessor has in a unit).

With this in mind, interpreting "commencement of a well on the leased premises" to mean that Range's activities on the Null property constitutes the "commencement of a well" on the Neuhard property is unreasonable because it would allow Range to drill under the surface of the Neuhards' property under the authority of the lease agreement, without being required to properly unitize the property. The Marcellus Shale gas that originated from under the Neuhard property would be commingled with the Marcellus Shale gas that originated from under the Null property. Since the gas would be "produced," and solely measured and metered at the wellhead, on the surface of the Null property, the Neuhards would not be entitled to a royalty on any of the

---

production costs.

gas produced from the wells located on Eugene Null's property. See Paragraph 4.1 of lease. Such an interpretation would allow the Neuhards' gas to be removed without them being compensated for their gas. This is an unreasonable interpretation of the phrase "commence a well on the leased premises," and in direct contradiction to the clear intent of the parties.

Range agrees that this lease was drafted for vertical wells and did not contemplate horizontal well drilling. See Carl Steinle deposition, pp. 70 -72, Exhibit "H." This supports the Neuhards' contention that "on the leased premises" should be interpreted to mean "on the surface of the leased premises." The provisions of the lease, when read as a whole, are consistent when the phrase "on the leased premises" in the lease is read to refer to the surface of the leased premises.

## CONCLUSION

Range exceeded its authority to unitize the Neuhards' property when it created a 395.0638 acre unit. Consequently, the unitization was not valid and cannot form a basis to extend the lease beyond the five year primary term.

This Court should find that the lease had expired as of June 21, 2011 as the property has not been properly unitized and no well has been commenced on the leased premises.

        ELION, WAYNE, GRIECO, CARLUCCI,
        SHIPMAN, DINGES & DINGES, P.C.

        By    s/Michael A. Dinges
            Michael A. Dinges, I.D. #69589
            Attorney for Plaintiffs
            125 East Third Street
            Williamsport, PA 17701
            (570) 326-2443 (phone)/(570) 326-1585 (fax)
            mdinges@elionwayne.com